**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------

MONDIS TECHNOLOGY LTD.                    Case No. 15-cv-2340 (RA)

                    Petitioner,

        -against-


WISTRON CORPORATION


                    Respondent.
-----------------------------------------------------------


<u>**RESPONDENT WISTRON CORPORATION'S**</u>
<u>**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER**</u>
<u>**MONDIS TECHNOLOGY LTD.'S VERIFIED PETITION FOR CONFIRMATION OF**</u>
<u>**ARBITRAL AWARD**</u>

Matthew G. Ball (*pro hac vice*)
James P. Duffy IV (JD3242)
K&L Gates LLP
599 Lexington Avenue
New York, New York 10020
P:  +1 212.536.4019
F:  +1 212.536.3901
matthew.ball@klgates.com
jp.duffy@klgates.com

*Attorneys for Respondent*
*Wistron Corporation*

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................................1

II.    PRELIMINARY STATEMENT ...........................................................................1

III.   FACTUAL BACKGROUND..................................................................................4

       A.  Mondis Fails to Contest that Wistron Is Obligated to Withhold Taiwanese Taxes.......4

       B.  Mondis Fails to Contravene Wistron's Pleadings Which Squarely Raise the
           Withholding Tax Issue...................................................................................6

       C.  The Course of Dealing Between Wistron and Mondis Clearly Established That
           Royalty Payments Would Be Made Net of Taiwanese Withholding Tax .....................7

       D.  Mondis Objects to Deduction of Withholding Tax for the First Time in Post-Award
           Briefing ......................................................................................................8

       E.  Wistron Suffered Serious Prejudice Caused By Mondis' Failure to Raise the Tax
           Issue During the Arbitration Proceeding ........................................................9

       F.  The Tribunal Rules That It Is *Functus Officio* on the Tax Withholding Issue ...........10

IV.    LEGAL STANDARD ...........................................................................................10

V.     ARGUMENT..........................................................................................................11

       A.  The New York Convention's Public Policy Exception Applies Because Enforcing the
           Award to Allow Mondis to Collect Withholding Tax Would Cause Wistron to Violate
           Taiwanese Tax Law .....................................................................................11

       B.  The New York Convention's Due Process Exception Applies Because Wistron Was
           Effectively Unable to Present Its Case as to Wistron's Right to Deduct Taiwanese
           Withholding Taxes From Portions of the Award Designated Royalties and Interest..12

       C.  Alternatively, This Court Should Hold That Payment of the Award Net of Taiwanese
           Withholding Taxes Fully Satisfied the Award, and That No Additional Payments
           Need Be Made .............................................................................................15

VI.    CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Manzo,*
    380 U.S. 545 (1965)......................................................................................................12

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,*
    156 F.3d 310 (2d Cir. 1998) .......................................................................................11

*Grand Light & Supply Co. v. Honeywell, Inc.,*
    771 F.2d 672 (2d Cir. 1985) .......................................................................................14

*Iran Aircraft Industries v. Avco Corp.,*
    980 F.2d 141 (2d. Cir. 1992) ..........................................................................3, 12, 15

*Jimenez v. Tuna Vessel 'Granada',*
    652 F.2d 415 (5th Cir. 1981) .....................................................................................14

*Nelson v. Adams USA, Inc.,*
    529 U.S. 460 (2000)....................................................................................................14

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du*
    *Papier (RAKTA),*
    508 F.2d 969 (2d Cir. 1974) .......................................................................................12

*Phoenix Aktiengesellschaft v. Ecoplas, Inc.,*
    391 F.3d 433 (2d Cir. 2004) .......................................................................................11

*Rexnord Holdings, Inc. v. Bidermann,*
    21 F.3d 522 (2d Cir. 1994) .....................................................................................6, 15

*United States v. Ross,*
    302 F.2d 831 (2d Cir. 1962) ....................................................................................1, 11

**Statutes**

9 U.S.C. § 207.....................................................................................................................11

9 U.S.C. § 2..........................................................................................................................3

9 U.S.C.  § 9........................................................................................................................11

**Other Authorities**

1958 United Nations Convention on the Recognition and Enforcement of Foreign
    Arbitration Awards (the "New York Convention"), Article V..................................................3

1958 United Nations Convention on the Recognition and Enforcement of Foreign
    Arbitration Awards (the "New York Convention"), Art. V(1)(b)...................................*passim*

1958 United Nations Convention on the Recognition and Enforcement of Foreign
    Arbitration Awards (the "New York Convention"), Art. V(2)(b).......................................1, 11

Paul Tan & Jawad Ahmad, *The UNCITRAL Model Law and Awards infra petita*,
    <u>Journal of International Arbitration</u> (June 2014). .............................................................3, 15

## I.     INTRODUCTION

Respondent Wistron Corporation ("Wistron") submits this Memorandum of Law in opposition to Petitioner Mondis Technology Corporation's ("Mondis") Verified Petition to Confirm an Arbitral Award ("Petition").

## II.    PRELIMINARY STATEMENT

Wistron has already paid Mondis nearly all of an arbitral award ("Award") that totaled more than $3.2 million, plus interest, with the vast majority paid to Mondis long before Mondis filed its Petition with this Court.  The only reason why the Parties are here now is that Mondis wants to collect this last outstanding amount, which represents 10% royalty and interest taxes that Wistron is legally required by Taiwanese law to withhold from Mondis and to pay to the Taiwanese tax authorities.

The only reason why Wistron is expending significant legal fees and asking this Court to commit scarce judicial resources is because Wistron's withholding obligation is not optional under Taiwanese law.  Long-standing and well-settled precedent holds that in the interest of international comity and public policy, this Court should not enforce an award in a country that would result in the violation of a law of that country.  *United States v. Ross*, 302 F.2d 831, 834 (2d Cir. 1962) ("[N]o court should order the performance of an act in a foreign country when that act will violate the foreign country's laws."); 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitration Awards (the "New York Convention"), Art. V(2)(b).  Yet this is exactly what Mondis seeks to do by confirming, and then enforcing the Award to scrape these last dollars from the instant barrel.  Recognition and enforcement should be denied for this reason alone.

Moreover, Wistron only finds itself in a position where it must defend against confirmation here because Mondis failed to contest in the underlying arbitration that Wistron was obligated to withhold Taiwanese taxes, but later contested that fact *after* the Award was issued and *after* the arbitral tribunal was *functus offico* as to the withholding issue.  Specifically, the main issue in the arbitration proceeding was whether Wistron had underpaid or overpaid royalties under a patent license with Mondis.  As part of its case-in-chief, Wistron pled, as it was required to do under applicable New York law, that it had performed the contract and paid all royalties *in full net of Taiwanese withholding taxes.*  Wistron believed that this was a noncontroversial point, given that Wistron in the course of dealings with Mondis under the contract -- both before and during the arbitration itself -- had withheld more than $4 million in Taiwanese taxes, with Mondis making no objection at any time.  Indeed, Mondis in its responsive arbitration pleadings failed to contest Wistron's right to withhold taxes, though Wistron had squarely raised the issue, and never itself raised the withholding tax issue until after it had already obtained an award of underpaid royalties.

By the time Mondis first raised the tax withholding controversy with the Tribunal, the time to modify or correct the award under the UNCITRAL rules had expired, and the Tribunal lacked jurisdiction to revisit the issue.

Had Mondis given Wistron any notice whatsoever that Wistron's right to withhold was a contested issue, Wistron would have pled additional legal theories and introduced substantial evidence on the issue, and would have taken steps to ensure that the Award included a ruling on the withholding tax question, given that compliance with Taiwanese tax law is a substantial and material issue to Wistron notwithstanding the relatively small size of the instant dispute. However, because Mondis did not inform Wistron about its views on the withholding issue until

2

it was far too late, Wistron was effectively and practically "unable to present [its] case" on the withholding issue, to its significant prejudice. *See* New York Convention, Art. V(1)(b). Although the grounds to refuse recognition and enforcement of an Award under Article V of the New York Convention are narrow, they certainly encompass a violation of due process that effectively rendered Wistron unable to present its case on the withholding issue. *Iran Aircraft Industries v. Avco Corp.*, 980 F.2d 141, 145-46 (2d. Cir. 1992) (New York Convention provides for nonenforcement of award where party denied the opportunity to be heard in a meaningful time or in a meaningful manner).

Alternatively, the Tribunal's failure to include in its Award a ruling that royalty payments are made in full net of Taiwanese withholding taxes renders the Award *infra petita* in that respect, and thus Wistron's right to present its case was violated for that reason as well. *See* Paul Tan & Jawad Ahmad, *The UNCITRAL Model Law and Awards infra petita*, Journal of International Arbitration (June 2014).

Wistron is therefore forced to respectfully request that this Court issue an order pursuant to Chapter 2 of the Federal Arbitration Act, which enables the New York Convention, to refuse to recognize or enforce the Award to the extent Mondis seeks to recover the 10% taxes that Wistron is legally required to withhold from Mondis under Taiwanese laws and regulations.

As an alternative to issuing an order refusing to recognize or enforce the Award, Wistron respectfully requests that this Court issue an order finding that Wistron satisfied its obligation by paying the Award in full net of Taiwanese withholding taxes. Wistron squarely pled that royalties under the 2009 Patent License Agreement were paid in full net of Taiwanese taxes, and Mondis failed to contest the point at any time before the Tribunal issued the Award. If Mondis

believed Wistron had no right to deduct withholding taxes, it was for Mondis to make the claim.
Instead, as the Tribunal found, no such claim was ever made or determined.

## III.   FACTUAL BACKGROUND

### A.   Mondis Fails to Contest that Wistron Is Obligated to Withhold Taiwanese Taxes

Wistron originally brought the underlying arbitration against Mondis to have Mondis
return certain royalties that Wistron already paid to Mondis under a Patent License Agreement
and Amendment dated October 2009 ("PLA") on sales of computer monitors.  Wistron also
sought an award declaring that it was not required to pay royalties under certain sales of such
monitors to Hewlett Packard Company ("HP").

Mondis asserted a counterclaim in the underlying Arbitration seeking damages from
Wistron on grounds that Wistron had supposedly underpaid royalties on HP sales and sales to
other customers.  (Declaration of Matthew G. Ball in Support of Respondent Wistron
Corporation's Memorandum of Law in Opposition to Petitioner Mondis Technology Ltd.'s
Verified Petition for Confirmation of Arbitral Award ("Ball Decl.") ¶ 2 & Exh. A.)

On December 17, 2014, the Tribunal issued an Award rejecting Wistron's claims and
largely sustaining Mondis' counterclaim.  (Verified Petition for Confirmation of Arbitral Award,
Exh. D ¶ 174).  Although Wistron was disappointed and continues to disagree with the
Tribunal's decision, Wistron paid to Mondis the following sums on or about January 26, 2015 in
satisfaction of the Award:

- $1,060,000 pursuant to Paragraph 174(e) of the Award, from which Wistron
  withheld 20% taxes, or $212,000, pursuant to Taiwanese tax laws and regulations;

- $1,040,553 pursuant to Paragraph 174(f) of the Award, from which Wistron
  withheld 20% taxes, or $208,110.60, pursuant to those same laws and regulations;

- $403,926 pursuant to Paragraph 174(j) of the Award, from which no taxes were withheld;

- $782,059.50 pursuant to Paragraph 174(l) of the Award, from which no taxes were withheld; and

- $71,114.08 representing interest on the above amounts, from which Wistron withheld 20% taxes, or $14,222.82, pursuant to Taiwanese tax laws and regulations.

(Ball Decl. ¶ 3 & Exh. B.)

Pursuant to Taiwanese tax law, Wistron generally must withhold 20% on royalty payments and interest to foreign entities.  (Ball Decl. ¶ 20 & Exh. O.)  Under a tax treaty between the United Kingdom (Mondis' home country), and Taiwan, these amounts may be reduced to 10%, provided that Mondis submits certain documentation, including a valid Certificate of Residency (necessary to demonstrate that Mondis is entitled to the benefits of the treaty).  (Ball Decl. ¶ 21 & Exh. P, ¶ 22 & Exh. Q.)

When Wistron made payment of the Award to Mondis, Mondis had not submitted an updated Certificate of Residency to Wistron, and thus Wistron was unable to take advantage of the tax treaty between the UK and Taiwan, and was thus required under Taiwanese law to deduct 20% withholding, rather than 10% withholding.  (Ball Decl. ¶ 4 & Exh. C)  On or about February 11, 2015, Mondis submitted to Wistron an updated Certificate of Residency.  (Ball Decl. ¶ 5 & Exh. D.)

On or about April 8, 2015, Wistron applied to the Taiwanese taxing authority for a refund of some of the withheld taxes, based on Mondis' submission of an updated Certificate of Residency.  The Taiwanese taxing authority granted the refund in the amount of $276,369.48, which Wistron promptly paid to Mondis.  (Ball Decl. ¶ 6.)

At issue now is the remaining 10% withheld from amounts under the award designated as royalties and interest, as well as the issue of whether Wistron may withhold taxes from payment of underpaid royalties and interest that at the time of this filing remain unquantified.[1]

### B.     Mondis Fails to Contravene Wistron's Pleadings Which Squarely Raise the Withholding Tax Issue

Under New York law, Wistron was required to plead and prove as part of its case-in-chief that it performed its obligations under the PLA and the Amendment.[2]  Wistron did so in its Statement of Claim by pleading that it had paid the royalties due under the PLA and the Amendment in full, even though 10% taxes had been withheld pursuant to Taiwanese tax laws and regulations.  (Ball Decl. ¶ 8 & Exh. F.)  Moreover, Wistron introduced at the hearing the Witness Statement of Liyun Chen, which included evidence as to the royalty payments, and the withholding of Taiwanese tax.  (Ball Decl. ¶ 9 & Exh. G.)

Mondis' Statement of Defense and Counterclaim completely failed to mention the withholding tax issue, even though the rules governing the arbitration required Mondis to points it intended to contest.  (Ball Decl. ¶ 2 & Exh. A.)[3]  Nor did Mondis cross-examine Ms. Chen on the withholding issue at the hearing.  (Ball Decl. ¶ 10.)

---

[1]     The Tribunal retains jurisdiction under the Final Award to issue a declaration as to the royalties that Wistron owes on more recent sales of monitors to HP.  (Verified Petition, Exh. D. ¶ 174(h).)  The Parties are currently engaging in a license audit process to confirm what is owed. (Ball Decl. ¶ 7.)

[2]     To establish the elements of a cause of action for breach of contract the plaintiff must allege, among other things, the plaintiff's performance under the contract.  *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994).

[3]     Pursuant to Article 21(2) of the UNCITRAL Rules, Mondis' Statement of Defense was required to "reply to the particulars . . . of the statement of claim."  (Ball Decl. ¶ 23 & Exh. R.)

### C.      The Course of Dealing Between Wistron and Mondis Clearly Established That Royalty Payments Would Be Made Net of Taiwanese Withholding Tax

The fact that Mondis failed to contest the withholding tax issue in its pleadings was unsurprising.  The course of dealings between Mondis and Wistron firmly established the Parties' agreement that payments made under the PLA and the Amendment would be made net of Taiwanese withholding tax.

During the period the PLA and the Amendment were in force, Wistron withheld 10% taxes pursuant to Taiwanese laws and regulations from every royalty payment made to Mondis, without any objection from Mondis.  (Ball Decl. ¶ 9 & Exh. G, ¶ 11 & Exh. H. )  In fact, through the inception of the PLA, through June 6, 2014, Wistron withheld more than *$4 million* from royalty payments made to Mondis, representing 10% of all amounts paid, and paid such amounts to the Taiwanese taxing authority, as follows:

- Wistron withheld a total of $3.15 million from the $31.5 million Initial Sum described in the PLA;

- Wistron withheld a total of $800,000 from the $8 million "Further Sum" described in the Amendment; and

- Wistron withheld a total of $182,902.46 from the Adjustments to the Further Sum due under the Amendment.

(*Id.*)  This $4,132,902.25 that Wistron withheld pursuant to Taiwanese tax laws and regulations was nearly twice the amount of the quantified royalty amounts that this Tribunal awarded to Mondis on December 19, 2014, in Paragraphs 174(e) and (f) of the Award.

Mondis' failure to object to Wistron's deduction of Taiwanese withholding taxes continued even after the arbitration proceeding was in full swing.  On March 11, 2014, after Wistron had submitted its Statement of Claim, and after Mondis submitted its Statement of Defense and Counterclaim -- in which again, Mondis took no issue with Wistron's allegation that

payments under the PLA were made in full net of Taiwanese taxes -- Mondis principal Michael Spiro wrote to the Taiwanese taxing authority authorizing Wistron to file for a withholding tax certificate for payments made pursuant to the PLA and its Amendment.  (Ball Decl. ¶ 12 & Exh. I.)  On or about the next day, Mondis received and submitted to Wistron a Certificate of Residency so Mondis could take advantage of the benefits of the UK-Taiwan tax treaty described above.  (*Id.*)  Wistron duly withheld 10% taxes from royalty payments to Mondis on March 21, 2014, without objection from Mondis.  (*Id.*)

## D.    Mondis Objects to Deduction of Withholding Tax for the First Time in Post-Award Briefing

On January 22, 2015, Mondis submitted to the Tribunal a Post-Final Award Application (the "Application") where Mondis for the first time took the position that Wistron was not permitted to deduct Taiwanese withholding taxes from those portions of the Award that constituted underpaid royalties and other sums.  (Ball Decl. ¶ 13 & Exh. J.)  Mondis waited to file its Post-Final Award Application until after the time under the UNCITRAL rules to interpret or correct the Award had expired, and after the expiration of the Tribunal's jurisdiction over the matter.  (*Id.* & ¶ 14 & Exh. K.)[4]

In its Application, and in further communications to the Tribunal on the issue, Mondis took the position that the language of the PLA and the Amendment required Wistron to bear the Taiwanese taxes, and that Mondis' failure to object to Wistron's deduction of millions of dollars from royalty payments represented nothing more than a gratuitous concession.  (Ball Decl. ¶ 13 & Exh. J, n.2, ¶ 15 & Exh. L.)

---

[4] Under the UNCITRAL Rules, Articles 37 and 38, parties have 30 days from the day of receipt of the Final Award to request the Tribunal to interpret or correct the award.  (Ball Decl. ¶ 23 & Exh. R.)

**E.   Wistron Suffered Serious Prejudice Caused By Mondis' Failure to Raise the Tax Issue During the Arbitration Proceeding**

Mondis' silence on the tax withholding issue prejudiced any chance Wistron had to contest the issue during the arbitration proceeding -- as Mondis itself acknowledged to the Tribunal in correspondence.  Specifically, as part of its Post-Final Award submission to the Tribunal, Mondis admitted "[o]f course it is now too late to try Wistron's new 'course of dealings' claims . . . ."  (Ball Decl. ¶ 16 & Exh. M.)

On this last point, at least, Wistron completely agrees.  Had Wistron been given any notice whatsoever that Taiwanese withholding taxes would be at issue should Mondis prevail on its counterclaim for underpaid royalties, Wistron would have had the opportunity to:

(1) Plead and prove the nature of the Taiwanese withholding tax obligation.  At minimum, Wistron would have introduced into evidence the Taiwanese tax statutes and regulations, would have had the opportunity to obtain translations of any revenue rulings that supported its position, and would have had the opportunity to disclose an expert on Taiwanese tax law.

(2) Plead and prove the Parties' course of dealings concerning the withholding of taxes from the royalty payments due Mondis.  Wistron would have had the opportunity to introduce any testimony concerning discussions of who was responsible to bear the burden of Taiwanese withholding taxes.   Wistron could have also introduced the evidence discussed above, showing that Mondis continued to acquiesce to the deduction of taxes even after the arbitration began.

(3) Plead and argue alternative legal theories bearing on the question of who was responsible to pay Taiwanese withholding taxes.  For example, as Mondis points out, Wistron could have pled a theory that the parties' course of dealings showed the parties' interpretation of the PLA provision concerning payment of taxes.  Wistron could have asserted in the alternative that the parties' course of conduct amended or waived the provision in the PLA concerning the payment of taxes.  Wistron could have also pled an illegality defense if the PLA's provision concerning the payment of taxes was interpreted to require Wistron to bear the tax burden.

(4) Seek discovery from Mondis into the withholding tax issue.  Because Taiwanese withholding was not contested by Mondis in its pleadings, Wistron's narrow discovery requests were not directed to this point.

(Ball Decl. ¶ 17)  But, as Mondis admits, by the time Mondis indicated that withholding taxes were in controversy, it was too late to do any of these things.

F.    **The Tribunal Rules That It Is *Functus Officio* on the Tax Withholding Issue**

Among other points, Wistron in its response to Mondis' Application asserted that the Tribunal was *functus officio* as to the tax question, and thus lacked jurisdiction to rule on it. Wistron did this for two reasons:  first, it appeared to be true, and Wistron was not interested in obtaining a decision from the Tribunal in excess of its jurisdiction; and second, Wistron was concerned about the Tribunal rendering a decision on the tax issue on a limited factual and legal record.  (Ball Decl. ¶ 18)

As Wistron suspected, the Tribunal on March 1, 2015, issued an order finding that, among other things, that it lacked jurisdiction to determine the taxation issue.  (Ball Decl. ¶ 14 & Exh. K.)  The Tribunal also found that "[n]o claim as to Wistron's right to deduct Taiwan taxes from royalties or other payments was ever made or determined in this arbitration," (*Id.*)  To the extent that this statement can be interpreted as a finding that Wistron did not plead the tax issue, Wistron disagrees with it, because Wistron squarely raised the issue in its pleadings as described above.

In any event, Mondis now seeks to obtain through this confirmation proceeding *de facto* what it failed to obtain in the arbitration ruling *de jure* -- a finding that, as a practical matter, Wistron was not permitted to deduct Taiwanese withholding taxes as it did.

IV.    **LEGAL STANDARD**

"Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.  The court shall confirm the

award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.[5]

Wistron contends that two grounds in the New York Convention justify refusal of recognition and refusal of enforcement of the Award to the extent Mondis seeks to collect the amounts withheld by Wistron pursuant to Taiwanese tax law.  The first is the public policy exception found in Article V(2)(b); the second is the due process exception found in Article V(1)(b).

## V.      ARGUMENT

### A.      The New York Convention's Public Policy Exception Applies Because Enforcing the Award to Allow Mondis to Collect Withholding Tax Would Cause Wistron to Violate Taiwanese Tax Law

The New York Convention allows a Court to refuse to recognize or enforce the award if to do otherwise would be against the public policy of the courts in that State.  New York Convention, Art. V(2)(b); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998).  A recognized public policy concern in the United States generally, and the Second Circuit specifically, is that this Court should not enforce an award in a country that would result in the violation of law of that country.  *Ross*, 302 F.2d at 834 ("[N]o court should order the performance of an act in a foreign country when that act will violate the foreign country's laws.").  This is the situation that Wistron faces.

Wistron is required pursuant to Taiwanese tax law to withhold 20% taxes on payments to foreigners that constitute royalties or interest.  (Ball Decl. ¶ 20 & Exh. O).  Pursuant to the

---

[5] This Court may refuse to recognize or enforce the Final Award pursuant to Section 207 even though Wistron did not petition to vacate the Final Award pursuant to Section 9 of the Federal Arbitration Act.  The Second Circuit has held that in case of a conflict between Section 207 and Section 9, Section 9 is preempted.  *Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 436 (2d Cir. 2004).  Thus, to the extent Section 9 suggests that Wistron was required to move to vacate the Final Award to resist confirmation, this requirement conflicts with Section 207, and is thus preempted.

Taiwan-UK tax treaty, this amount can be reduced to 10% provided that the UK resident provides an appropriate certificate of residency.  (Ball Decl. ¶ 21 & Exh. P, ¶ 22 & Exh. Q.)  The Award explicitly recognizes that at least some of the sums awarded are underpaid royalties and interest. (Verified Petition, Exh. D ¶¶s 174(e), (f), and (h).  Enforcing the award against Wistron is tantamount to forcing Wistron to violate Taiwanese tax laws and regulations.  The Award should not be recognized or enforced to achieve that result.

> **B.**     **The New York Convention's Due Process Exception Applies Because Wistron Was Effectively Unable to Present Its Case as to Wistron's Right to Deduct Taiwanese Withholding Taxes From Portions of the Award Designated Royalties and Interest**

The New York Convention provides for nonrecognition or nonenforcement where "[t]he party against whom the award is invoked was . . . otherwise unable to present his case." *Iran Aircraft Indust. v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992) (quoting New York Convention, Art. V(1)(b)).  The Second Circuit has recognized that Article V(1)(b) "essentially sanctions the application of the forum state's standards of due process and that due process rights are entitled to full force under the Convention as defenses to enforcement." *Id.* (quoting *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 975-76 (2d Cir. 1974) (internal quotations omitted).  Under the law of the United States, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time or in a meaningful manner." *Id.* at 146 *(quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  If a party to an arbitration was denied the opportunity to be heard in a meaningful time or in a meaningful manner, enforcement of the Award should be refused pursuant to Article V(1)(b).  *Id.*

In *Iran Aircraft Industries*, the tribunal had indicated to Respondent Avco that it did not need to see actual invoices in order to adjudicate Avco's damage claim.  *Id.*  Avco thus

proceeded to try its claim using a method approved by the Tribunal, namely the submission of audited accounts receivable ledgers, and did not introduce original invoices into evidence.  *Id.* Later, the tribunal ruled that actual invoices were required to substantiate Avco's  claim, and thus rejected Avco's claim for lack of proof.  *Id.*  In other words, Avco was unaware, and had no reason to be aware, that its method of proof would be subject to contest, until it was already too late for Avco to do anything about it.  *Id.*  No doubt had Avco known that the tribunal would require actual invoices, Avco would have introduced actual invoices and avoided the issue that ultimately confronted it.

Although Wistron here was not misled by the Tribunal, Wistron was misled under the circumstances into believing that deduction of Taiwanese taxes from underpaid royalties and interest was noncontroversial, since there was a long history of such deductions being made -- even during the arbitration itself -- and because Wistron had pled as part of its case-in-chief that payments under the PLA and the Amendment had been made in full, even though they were net of Taiwanese withholding taxes.  As a result, Wistron remained unaware that it would be required to legally establish its right to deduct Taiwanese withholding taxes from those portions of the Award characterized as underpaid royalties and interest, and thus did not plead and prove the facts and legal theories that it would have, had Wistron known that the withholding tax issue was controversial.  (Ball Decl. ¶ 17).  Accordingly, Wistron as a practical matter was unable to present its case on the withholding tax issue, and the Award should be refused recognition and enforcement under New York Convention Article V(1)(b).

Wistron's situation here is analogous to that of a litigant faced with a surprise amendment to the pleadings after a trial has concluded.[6]   In that situation, the Second Circuit recognizes that "[s]ubstantial prejudice may exist where it is not clear that the opposing party had the opportunity to defend against the new claim and where that party might have offered additional evidence had it known of the claim." *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 680 (2d Cir. 1985).  This type of "substantial prejudice" is a due process violation.  *Id.* ("The 'trial of unpled issues by implied consent is not lightly to be inferred under Rule 15(b),' particularly 'in light of the notice demands of procedural due process,'" *quoting Jimenez v. Tuna Vessel 'Granada'*, 652 F.2d 415, 422 (5th Cir. 1981)); *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000) (if an amendment to a pleading violates Rule 15 due to prejudice to the opposing party, then due process is denied).

For reasons discussed above, Wistron never had any indication from Mondis that Mondis would take the position that Wistron could not deduct legally required withholding taxes from an award of royalties and interest -- indeed, Mondis' actions were completely to the contrary.  Now, after it is far too late for Wistron to properly litigate the issue, (as it could have), Mondis takes the position that the Award as a practical matter resolves the withholding tax issue against Wistron, even though Mondis never pled or led evidence on this issue.  Under the governing law of the United States as applied in this Circuit, Mondis would not be able to make such an amendment to its pleadings consistent with Wistron's due process rights.  *Grand Light & Supply Co.*, 771 F.2d at 680.   This is the precise situation that the New York Convention's "due

_____

[6]     Wistron is actually worse off than a litigant facing an unexpected amendment of pleadings after trial, since Mondis introduced no evidence on the withholding tax issue, and Wistron both pled and introduced evidence on it that was uncontested.  (Ball Decl. ¶¶ 13, 15 & Exh. F)

process" exception in Article V(1)(b) is meant to address.  *See Iran Aircraft Indust. v. Avco Corp.*, 980 F.2d at 145-46.  Recognition and enforcement of the Award should thus be denied.

Alternatively, recognition and enforcement of the Award should be denied because Wistron was unable to present its tax case for another reason.  As discussed above, Wistron squarely pled the withholding issue in its Statement of Claim, as performance is a required element to be pled and proven in a contract case.  *Rexnord Holdings, Inc.*, 21 F.3d at 525.  The Tribunal's Award should have adopted that uncontested finding, and its failure to do so renders the Award *infra petita* in that respect.  Commentators on international arbitration have argued that an *infra petita* award is another species of violation of a party's right to present his case.  *See* Paul Tan & Jawad Ahmad, *The UNCITRAL Model Law and Awards infra petita*, Journal of International Arbitration (June 2014) (Ball Decl. ¶ 19 & Exh. O).

C.      **Alternatively, This Court Should Hold That Payment of the Award Net of Taiwanese Withholding Taxes Fully Satisfied the Award, and That No Additional Payments Need Be Made**

As an alternative to issuing an order refusing to recognize or enforce the Award, Wistron respectfully requests that this Court issue an order finding that Wistron satisfied its obligation by paying the Award in full net of Taiwanese withholding taxes.  As discussed above, Wistron squarely pled that royalties under the 2009 Patent License Agreement were paid in full net of Taiwanese taxes, and Mondis failed to contest the point at any time before the Tribunal issued the Award.  (Ball Decl. ¶ 8 & Exh. F.)  If Mondis believed Wistron had no right to deduct withholding taxes, it was for Mondis to make the claim.  What Mondis did instead was continue to allow the deduction of Taiwanese taxes from royalty payments even after it submitted its Statement of Defense and Counterclaim.  (Ball Decl. ¶ 12 & Exh. I).  Moreover, as the Tribunal recognized in response to Mondis' Application for Post-Final Award Relief, "[n]o claim as to Wistron's right to deduct Taiwan taxes from royalties or other payments was ever made or

determined in this arbitration." (Ball Decl. ¶ 14 & Exh. K.) This Court should not *de facto* grant Mondis the relief it failed to secure *de jure* from the Tribunal. Accordingly, if the Court is unwilling to refuse to recognize or enforce the Award under the New York Convention, it should issue a ruling finding the Award to be paid in full with payments net of Taiwanese withholding.

## VI.    CONCLUSION

For the foregoing reasons, Respondent Wistron Corporation respectfully requests this Court to enter an order refusing recognition and enforcement of the Award to the extent Mondis seeks to recover the amounts withheld in taxes pursuant to Taiwanese law. Alternatively, this Court should issue an order finding that the Award is satisfied through payments net of Taiwanese withholding taxes.

Respectfully submitted,

Dated: June 8, 2015                         By:      */s/ Matthew G. Ball*

Attorneys for Respondent
WISTRON CORPORATION

James P. Duffy IV
599 Lexington Avenue
New York, NY 10022-6030
Tel:  (212) 536-3900
Fax: (212) 536-3901
JP.Duffy@klgates.com

Matthew G. Ball
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel:  (415) 882-8200
Fax: (415) 882-8220
matthew.ball@klgates.com