UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONDIS TECHNOLOGY LTD.,

          Petitioner,

v.

WISTRON CORPORATION,

          Respondent.

No. 15-CV-02340 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Petitioner Mondis Technology Ltd. ("Mondis") petitions for confirmation of an arbitral award entered in its favor against Respondent Wistron Corporation ("Wistron") under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention"), 21 U.S.T. 2517, *codified at* 9 U.S.C. § 201 *et seq.* Wistron opposes the petition and requests that the Court refuse to enter, recognize, or enforce the arbitral award. For the reasons set forth below, Mondis's petition is granted.

## BACKGROUND

Mondis is an English limited liability company engaged in the purchase, assertion, and licensing of patent rights. Verified Petition ("Pet.") ¶ 2; Pet. Ex. D ("Final Award") ¶ 2. Wistron is a Taiwanese manufacturer of consumer electronics. Pet. ¶ 3; Final Award ¶ 1.

In October 2009, Mondis and Wistron entered into a Patent License Agreement. Pet. ¶ 6; Pet. Ex. A ("PLA"). Under the PLA, Mondis granted Wistron a license to use certain "DDC" patents, which relate to the interaction between computers and monitors. *See* Pet. ¶ 6; Final Award

¶¶ 27, 32. Section 10.5 of the PLA provides that any dispute arising under the PLA shall be settled by arbitration. PLA § 10.5. Specifically, Section 10.5 provides, in relevant part:

> The following provision will apply in relation to any dispute under Clause 5.3 above, and any other controversy or claim arising out of or relating to this contract, or the breach, termination or invalidity thereof, whether at common law or under statute (including, but without limitation, claims asserting a violation of any antitrust law), which Mondis and Wistron agree in writing will be settled by arbitration under this Clause 10.5. ... The United States District Court for the Southern District of New York may enter judgment upon any award, either by confirming the award or by vacating, modifying or correcting the award. The parties agree that the Court will be entitled to vacate, modify or correct any award: (a) based upon any grounds referred to in the Federal Arbitration Act, (b) where the tribunal's findings of fact are not supported by substantial evidence, or (c) where the tribunal's conclusions of law are erroneous.

PLA § 10.5. The parties amended the PLA in October 2011. Pet. Ex. B.

After the PLA had been amended, the parties disputed Wistron's obligations under the agreement. *See* Final Award ¶¶ 39–45. In general, the dispute centered on the adequacy of Wistron's reporting and royalty payments. *See* Final Award ¶¶ 39–45. More specifically, the parties disputed the extent to which Wistron owed Mondis royalties on Wistron's direct sales to Hewlett Packard ("HP"), direct sales to customers other than HP, and indirect sales through distribution warehouses or "hubs." *See* Final Award § V, ¶¶ 46–81.

On July 30, 2013, after the parties failed to amicably resolve their dispute, Wistron served Mondis with a notice of arbitration. Pet. ¶ 8. On January 30, 2014, Wistron submitted a statement of claim against Mondis. Pet. ¶ 10. Wistron sought, *inter alia*, a refund for royalty payments on its sales of computer monitors to HP and a declaration that it need not pay future royalties on sales to HP. *See* Final Award § V, ¶¶ 99–144. On February 28, 2014, Mondis responded with a statement of defense and counterclaims. Pet. ¶ 10. Mondis denied Wistron's claims and asserted,

2

*inter alia*, that Wistron owed Mondis unpaid royalties and audit costs. *See* Final Award § V, ¶¶ 145–163.[1]

On December 17, 2014, an arbitral tribunal issued a final award (the "Final Award"). Pet. ¶ 12. The Final Award denied Wistron's claims and granted Mondis's counterclaim for royalties and audit costs. Pet. ¶ 12; Final Award ¶ 174. The Final Award ordered Wistron to pay Mondis $1,060,000.00 plus interest for royalties on non-HP sales; $1,040,553.00 plus interest for royalties on direct HP sales; as yet unquantified further royalties plus interest; $403,926.00 for audit costs; and $782,059.50 plus interest for a portion of Mondis's arbitration costs. Pet. ¶ 12; Final Award ¶ 174. The Final Award did not address either party's tax obligations.

On or about January 26, 2015, Wistron made several payments to Mondis to satisfy its obligations under the Final Award. Decl. of Matthew G. Ball in Supp. of Resp.'s Mem. in Opp'n to Verified Pet. ("Ball Decl.") ¶ 3. However, Wistron withheld 20% from some of these payments, citing its obligations under Taiwanese tax laws and regulations. Ball Decl. ¶ 3.[2] Mondis filed a post-final award application with the arbitral tribunal, asserting that "[t]here is simply no basis for the Taiwan tax deduction" and requesting that the tribunal order Wistron to "make all payments required by the Final Award in full, without any deduction, including, without limitation, for or in relation to Taiwan withholding taxes." Ball Decl. Ex. J, at 2, 5.[3]

On March 1, 2015, the tribunal issued a "procedural order post-final award" in response to Mondis's application. Ball Decl. ¶ 14; Ball Decl. Ex. K. The tribunal determined that it was "without power or jurisdiction to make the determinations that Mondis requests . . . and with regard

---

[1] The parties subsequently amended their claims and made various further submissions. *See* Pet. ¶ 10.

[2] Specifically, Wistron withheld 20% on royalty payments made pursuant to Paragraphs 174(e) (direct, non-HP sales) and 174(f) (direct sales to HP) of the Final Award, and on interest payments. Ball Decl. ¶ 3.

[3] Mondis filed its post-final award application on January 22, 2015, four days before Wistron made the payments discussed above. Ball Decl. ¶ 13; Ball Decl. Ex. J. Mondis represents that it had become aware of the "Taiwan tax issue" on January 8, 2015, when Wistron informed Mondis via e-mail of its plans to make tax-related withholdings. *See* Decl. of Edward Kling in Supp. of Mondis Tech. Ltd.'s Reply Br. ("Kling Decl.") ¶ 2; Kling Decl. Exs. A–B.

3

to the Taiwan tax deduction altogether." Ball Decl. Ex. K, at 3. The tribunal noted, however, that "[n]o claim as to Wistron's right to deduct Taiwan taxes from royalty payments or other payments due under the contracts at issue in this arbitration was ever made or determined in this arbitration." Ball Decl. Ex. K, at 3. The tribunal continued, "There is no basis whatsoever for the Tribunal to consider this issue now." Ball Decl. Ex. K, at 3.[4]

In the instant petition, Mondis seeks an order confirming the Final Award, *see* Pet. at 7, which Wistron opposes, *see* Resp. to Pet. for Confirmation of Arbitral Award ("Resp.").

## LEGAL STANDARDS

Mondis's petition for confirmation of the Final Award is governed by the Federal Arbitration Act and the New York Convention. Under the FAA, any party to an arbitration proceeding may apply for a judicial decree confirming the award. 9 U.S.C. § 9. A court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. *Id.* Here, although Mondis and Wistron are both foreign citizens, the domestic provisions of the FAA apply because the Award was entered in New York. *See Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016).

The New York Convention provides a similar mechanism for enforcing arbitration awards, where the arbitration arises out of a relationship involving at least one foreign citizen. *See* 9 U.S.C. §§ 202, 207. Under the New York Convention, any party to the arbitration may apply for a court order confirming the award, which the court "shall confirm . . . unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award" under the Convention. *Id.*

---

[4] Wistron represents that, under a tax treaty between the United Kingdom and Taiwan, the applicable Taiwanese tax rate on royalty and interest payments is 10%, not the 20% it initially withheld in its payments to Mondis. *See* Resp.'s Opp'n Mem. at 5. On or about April 8, 2015, after receiving from Mondis an updated certificate of residency, Wistron applied to the Taiwanese taxing authority for a refund of half the sum Wistron had withheld. Ball Decl. ¶ 6. The Taiwanese tax authority granted the refund in the amount of $276,369.48, which Wistron then paid to Mondis. Ball Decl. ¶ 6; Ball Decl. Ex. E.

4

§ 207. "The FAA and the New York Convention work in tandem, and they have overlapping coverage to the extent that they do not conflict." *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (alteration omitted) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 n.1 (2d Cir. 2006)). As the parties do not dispute, the New York Convention applies in this case because the arbitral award arose out of a relationship between two foreign citizens. *See* 9 U.S.C. § 202; Pet. ¶¶ 2–3.

"The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)). This deference promotes the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reinsurance*, 668 F.3d at 71–72 (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). In most cases, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (explaining that an application to confirm an arbitral award under the FAA "will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court").

Under the FAA and the New York Convention, the grounds for vacating an arbitration award are narrow. The FAA establishes "limited exceptions" to the enforcement of arbitration awards, including corruption, fraud, evident partiality, or misconduct on the part of the arbitrators. *Kolel*, 729 F.3d at 104; *see* 9 U.S.C. § 10(a). Under the New York Convention, a court may refuse

5

to recognize or enforce an arbitral award if, *inter alia*, "recognition or enforcement of the award would be contrary to the public policy" of the country in which enforcement or recognition is sought, Convention art. V(2)(b), or if "[t]he party against whom the award is invoked was . . . unable to present his case," *id.* art. V(1)(b). *See Yusuf Ahmed Alghanim & Sons v. Toys 'R' Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997).[5] "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co.*, 462 F.3d at 110; *see also Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 313 (2d Cir. 1998) (New York Convention).

## DISCUSSION

Wistron argues that the Court should refuse to enter, recognize, or enforce the Final Award for three reasons. First, Wistron argues that the New York Convention's "public policy" exception applies because enforcement of the Final Award would require Wistron to violate Taiwanese tax law. Resp.'s Opp'n Mem. at 11–12; Resp. ¶ 25. Second, Wistron argues that the New York Convention's "due process exception" applies because Wistron was "effectively unable to present its case as to Wistron's right to deduct Taiwanese withholding taxes." Resp.'s Opp'n Mem. at 12–15; Resp. ¶ 26. Finally, Wistron argues that it has already satisfied its obligations under the Final Award by "paying the Award in full net of Taiwanese withholding taxes." Resp.'s Opp'n Mem. at 15–16; Resp. ¶ 27. The Court finds Wistron's arguments unpersuasive.

### A. Public Policy

Wistron first claims that the Court should refuse to enforce the Final Award under the New York Convention's "public policy" exception. Resp.'s Opp'n Mem. at 11–12. This public policy

---

[5] The Convention provides various other grounds for refusing to recognize or enforce arbitration agreements. *See* Convention art. V (listing grounds for non-enforcement, including, for example, incapacity, lack of notice, or decisions on matters beyond the scope of the submission to arbitration). *See generally Yusuf*, 126 F.3d at 19. Wistron does not assert that any of these grounds support its opposition to the Petition.

6

exception applies if "[t]he recognition or enforcement of the award would be contrary to the public policy" of the country where recognition and enforcement is sought, which in this case is the United States. Convention art. V(2). "[T]his public policy exception is to be construed very narrowly and should be applied only where enforcement would violate our most basic notions of morality and justice." *Europcar Italia*, 156 F.3d at 315 (internal quotation marks omitted). Wistron represents that Taiwanese tax law requires it to withhold 20% taxes on royalty and interest payments to foreign citizens. Resp.'s Opp'n Mem. at 11. In Wistron's view, "[e]nforcing the award against Wistron is tantamount to forcing Wistron to violate Taiwanese tax laws and regulations." Resp.'s Opp'n Mem. at 12. Requiring Wistron to violate the laws of a foreign nation, Wistron claims, would be contrary to U.S. public policy.

As an initial matter, the Court notes that Wistron's tax obligations under Taiwanese law are, on the current record, unclear. In particular, Wistron has not clearly demonstrated *how* it must pay taxes under Taiwanese law; that is, Wistron has not shown that Taiwanese law requires it to pay taxes on the Final Award by *withholding* those taxes rather than paying those taxes through other means, such as direct payments to Taiwanese authorities. In support of its contentions, Wistron submitted excerpts of an online version of "Tax Related Laws and Regulations" from Taiwan's Ministry of Finance. *See* Ball Decl. ¶ 20; Ball Decl. Ex. O. This document states that taxes "shall be withheld" from certain types of interest and royalty payments. Ball Decl. Ex. O. Neither this document, however, nor any of Wistron's other submissions, contains any provisions of the Taiwanese tax laws or regulations that clearly apply to arbitral award payments. *See* Resp.'s Opp'n Mem. at 11–12; Ball Decl. Ex. O.[6] Moreover, Wistron represents that the taxation of its

---

[6] Wistron appears to argue that, because the Final Award "explicitly recognizes that at least some of the sums awarded are underpaid royalties and interest," its payments in service of the Final Award would receive the same tax treatment as royalty and interest payments under Taiwanese law. Resp.'s Opp'n Mem. at 12. Wistron has not, however, provided any support for this claim. For example, it has not identified any provisions of Taiwanese tax law

7

payments here are governed by a tax treaty between the United Kingdom and Taiwan, which states only that taxes on interest and royalties shall be "charged." *See* Ball Decl. Ex. P. Finally, the PLA provides that "Wistron will bear and pay all duties, levies and taxes (including, without limitation, withholding, sales and value added taxes . . .) imposed by the government." PLA § 6.3. This language seems to suggest that an obligation to "withhold" may be satisfied by a direct payment. Ultimately, Wistron's submissions leave open many questions about what, precisely, Taiwanese tax law requires—including, as relevant here, whether Wistron must withhold taxes on payments it makes in service of the Final Award.

In light of this ambiguity and the Court's obligation to "very narrowly" construe the New York Convention's public policy exception, Wistron has not shown that enforcement of the Final Award would require it to violate the laws of Taiwan and, by extension, contravene U.S. public policy. *Europcar Italia*, 156 F.3d at 315. The Final Award says nothing about Wistron's obligations to pay taxes, in Taiwan or elsewhere. Thus, on the record before the Court, the Final Award does not prevent Wistron from making any tax payments to Taiwanese authorities. In particular, to the extent that Taiwanese law requires Wistron to pay taxes on the Final Award, Wistron has not shown that it would be unable to comply with Taiwanese law by paying Taiwanese authorities directly, rather than through withholding, while also paying the Final Award in full. Accordingly, enforcement of the Final Award would not be contrary to U.S. public policy, and the New York Convention's public policy exception does not apply. Convention art. V(2)(b).

## B. Due Process

Wistron next argues that the Court should refuse to enforce the Final Award under the New

---

indicating that arbitral award payments are taxed at rates equivalent to those that would apply to similar types of payments outside the arbitration context. The Court is unwilling to rely exclusively on Wistron's representations regarding the applicability of Taiwanese tax requirements for royalty and interest payments to the arbitral award at issue here.

York Convention's due process exception. Under Article V(1)(b) of the New York Convention, a court may refuse to recognize and enforce an arbitral award if a party "was not given proper notice of the appointment of the arbitrator or of the arbitration or was otherwise unable to present his case." Convention art. V(1)(b). The Second Circuit has recognized that Article V(1)(b) "essentially sanctions the application of the forum state's standards of due process, and that due process rights are entitled to full force under the Convention as defenses to enforcement." *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992) (internal quotation marks omitted). The Second Circuit has further explained that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)).

Wistron claims that it was "effectively unable to present its case as to Wistron's right to deduct Taiwanese withholding taxes." Resp.'s Opp'n Mem. at 12. This argument is meritless. As the arbitration tribunal explained in response to Mondis's post-final award application, "[n]o claim as to Wistron's right to deduct Taiwan taxes from royalty payments or other payments due under the contracts at issue in this arbitration was ever made or determined in this arbitration." Ball Decl. Ex. K, at 3. Although Wistron now asserts that it "squarely pled the withholding issue in its Statement of Claim," Wistron points only to two footnotes in its Statement of Claim, in which Wistron noted that it had withheld 10% from certain prior payments made pursuant to the PLA "for tax reasons," Ball Decl. Ex. F, at 8 nn.10, 11. These statements, however, do not address arbitration, or even suggest that withholding would be appropriate in the context of an arbitral award. Indeed, on the record before the Court, it appears that Wistron only informed Mondis of its position that it was entitled to make tax withholdings from its Final Award payments on January 8, 2015—weeks *after* the tribunal had issued the Final Award. Kling Decl. ¶ 2; Kling Decl. Ex.

9

A. Wistron's failure to raise any argument related to tax withholding during arbitration is particularly notable because, under the PLA, Wistron was required to "bear and pay all duties, levies and taxes (including, without limitation, withholding, sales and value added taxes)." PLA ¶ 6.3. Wistron has thus not shown that it ever attempted to make a "case" regarding tax withholding, much less that it was "unable to present" one. Convention art. V(1)(b).

Not only did the tribunal satisfy the requirements of due process in issuing a Final Award without addressing the Taiwanese tax issue, but it would have overstepped its authority had it done otherwise. The FAA provides that an arbitral award may be vacated "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). As the Second Circuit has explained, "an arbitrator may exceed her authority by . . . considering issues beyond those the parties have submitted for her consideration." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011); *see also DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997) ("Our inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions . . . to reach a certain issue . . . ."). As discussed above, here Wistron did not submit the issue of Taiwanese tax withholding to the arbitral tribunal. Had the tribunal nonetheless decided the issue, it may well have exceeded its authority and rendered an arbitral award that could be vacated pursuant to Section 10(a)(4) of the FAA.

In any event, the record belies any claim that the arbitral tribunal denied Wistron an opportunity to present its case. As Wistron acknowledges, it "was not misled by the Tribunal." Resp.'s Opp'n Mem. at 13. The tribunal presided over many months of proceedings, which involved "an extensive exchange of documents" and a two-day hearing featuring multiple witnesses. Final Award ¶ 21. The tribunal's 62-page Final Award is thoughtful and even-handed. The Court has little doubt that, had Wistron properly submitted its argument related to Taiwanese

10

tax withholding, the tribunal would have appropriately addressed it. Therefore, Wistron was not "unable to present [its] case," and the New York Convention's due process exception does not apply. Convention art. V(1)(b).[7]

## C. Satisfaction of Award by Prior Payments

In the alternative, Wistron urges the Court to find that Wistron has satisfied its obligation through its prior payments, net of tax withholding. Resp.'s Opp'n Mem. at 15. The Court declines to do so. As discussed above, the Final Award is clear: it requires Wistron to make certain payments to Mondis "in full." Final Award ¶ 174. The Final Award does not state that Wistron may make any deductions, whether for tax withholding or for any other purpose. *See* Final Award ¶ 174. Moreover, Wistron has provided no basis from which to infer that the tribunal implicitly authorized Wistron to deduct taxes, for the tribunal explicitly stated that "[n]o claim as to Wistron's right to deduct Taiwan taxes from royalty or other payments was ever made or determined in this arbitration." Ball Decl. Ex. K, at 3. Wistron has thus failed to show that it may fulfill its obligations under the Final Award by withholding part of the total amount due.[8]

Finally, although the Final Award does not address withholding, Wistron argues that the parties' "course of dealing" and the "long history of such deductions being made" nonetheless entitle Wistron to make tax withholdings. Resp.'s Opp'n Mem. at 7–8, 13. Even assuming that Wistron has accurately represented the parties' "course of dealing," the Court does not find that

---

[7] Wistron argues that the Second Circuit's decision in *Iran Aircraft Industries v. Avco Corp.*, 980 F.2d 141 (2d Cir. 1992) supports its due process argument. The Court disagrees. In *Iran Aircraft*, one of the parties claimed that the arbitrators had advised the party not to provide certain documents as evidence. *Id.* at 143–44. The arbitrators' final award, however, rejected the party's claims because those documents were not introduced. *Id.* at 144. Here, the tribunal made no similar about-face: the tribunal was simply never asked to address Taiwanese tax withholding, and it never did. *See* Ball Decl. Ex. K, at 3. Accordingly, unlike in *Iran Aircraft*, Wistron has not shown that the tribunal denied Wistron due process by providing guidance that ultimately conflicted with its conclusions in the Final Award.

[8] Because the Court's review is limited to confirmation of the Final Award, the Court need not address whether Wistron may make tax withholdings on payments made to Mondis outside the context of the Final Award, including on any royalty payments made pursuant to the PLA.

11

this history authorizes Wistron to make deductions from its payments under the Final Award. Without qualification, the Final Award states that Wistron must pay certain amounts "in full." Final Award ¶ 174. There is no language in it suggesting that Wistron may pay Mondis in accordance with the parties' customs or indicating that the parties' course of dealing is relevant to Wistron's obligations under the Final Award. As a result, whether or not Wistron made tax withholdings in its prior payments to Mondis, the Final Award does not permit Wistron to satisfy its obligations by making any deductions from the total amount it owes.[9]

Accordingly, the Court denies Wistron's request for an order finding that Wistron has satisfied its obligations under the Award.

## CONCLUSION

For the foregoing reasons, the petition to confirm the Final Award is granted. Wistron is directed to pay the full amount of the award plus interest and costs. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: November 3, 2016
New York, New York

Ronnie Abrams
United States District Judge

---

[9] *Cf.* Restatement (Second) of Contracts § 203(b) ("[E]xpress terms are given greater weight than course of performance, course of dealing, and usage of trade . . . .").